UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Kyle Alberti as next friend of<br>K.A., a minor<br>    Plaintiff,<br><br>v.<br><br>Remington Arms Company, LLC<br><br>    Defendant. | Case No.  1:17-cv-00108-CWD<br><br>**DISCOVERY PLAN** |

# I. Preservation

   a. **Preservation & Proportionality:**  The parties have applied the proportionality standard in Rule 26(b)(1) to determine what information should be preserved and what information should not be preserved.  The parties agree to define the scope of discovery preservation following the Case Management Conference and provide a joint submission to the Court by June 26, 2017.

# II. Initial Disclosures

   a.  Pursuant to Rule 26(a), initial disclosures were provided on the following dates:

   - Plaintiffs:    June 26, 2017.
   - Defendants:   June 26, 2017.

## III.   Scope of Discovery

   a.  **Scope:**  Discovery is necessary on the following subjects/issues:

- For Plaintiff:

    1. Defendant's knowledge of its guns firing without a trigger pull;

    2. Defendant's knowledge of all the reported incidents of its guns firing without a trigger pull.

    3. Defendant's knowledge of all the reported injuries from its guns firing without a trigger pull;

    4. What, if anything, Defendant did to correct the issue of its guns firing without the trigger being pulled;

    5. What, if anything, Defendant did to warn consumers and the general public that its guns can fire without the trigger being pulled.

- For Defense:

    6. Remington does not agree to the scope of discovery proposed by Plaintiff which is inconsistent with the recent amendments to F.R.C.P. 26(b)(1).

    7. Facts of the occurrence;

    8. Injury and damages, including medical treatment and expenses;

## IV. <u>ESI</u>

    a. Defendant's position on ESI:

This is a straight-forward, product liability lawsuit alleging that a Remington Model 870 shotgun, and specifically the fire control or trigger mechanism of the shotgun, is defective and a cause of the Plaintiff's injury. Plaintiff alleges that, at the time of the incident, the shotgun discharged without a trigger pull. Remington denies this allegation. Indeed, after the incident but before the lawsuit was filed, the parties and their experts jointly inspected the shotgun and it functioned as designed and intended.

The fire control at issue is what is known as the "common fire control" and has been in production by Remington since the early 1960s. Remington has defended (successfully) other personal injury lawsuits alleging that shotguns with common fire controls can and did discharge without a trigger pull. In those prior cases, Remington collected and produced tens-of-thousands of pages of hard-copy and electronic records regarding the design, development and performance of shotguns that utilized the "common fire control." For efficiency and as an accommodation to the Plaintiff, Remington is willing to produce such relevant documents in the present case. Furthermore, Plaintiff's expert in the present case was

-3-

involved in prior product liability lawsuits against Remington concerning the "common fire control." As a result, the present case is not the type of case that necessitates starting from scratch with respect to document production and ESI. To the contrary, a discovery plan with significant and costly ESI obligations is much better suited for a commercial case with large quantities of relevant ESI within both the plaintiff and defendant corporations, but it is not well-suited for the type of personal injury case brought by the Plaintiff in the present matter. Furthermore, the medical specials in this matter are fixed and, when considering the amount in controversy, the parties are mindful of the cap on noneconomic damages. Full-blown ESI under these circumstances would be contrary to the recent amendments to F.R.C.P. 26(b)(1) and the renewed emphasis on "proportionality."

Therefore, discovery in this case should tailored such that the burden and expense of the proposed discovery does not outweigh its likely benefit, taking into account the needs of the case, the amount in controversy, each party's resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving those issues. *See* Fed. R. Civ. P. 26(b). Should the need arise for narrowly-tailored supplemental-type discovery on a unique issue in this case, Remington will agree to

-4-

      meet and confer with the Plaintiff regarding the most cost efficient method of collection and production, including with respect to ESI.

b. Plaintiff's position on ESI:

The Remington Common Fire Control (CFC) first used in the automatic shotgun, Model 11-48, in 1948. Remington used the same CFC in the next model it created, the pump Model 870 in 1950. That same year the Model 740 automatic, center-fire rifle was introduced. The CFC has been used in almost every pump and automatic shotgun, rifle, and rim-fire rifle ever since. It is estimated that there are between 25 – 30 million guns made and sold with the CFC.

The CFC can fire with the safety engaged and without the trigger being pulled. This has been reported thousands of times to Remington and there have been over 300 prior lawsuits involving incidents similar to this one. To this day, Remington has continued to deny that there is any problem with its CFC.

Plaintiff wishes to conduct discovery against Remington to learn of all of the reported incidents of guns containing the CFC discharging without the trigger being pulled. Plaintiff will then be able to show the reckless conduct and behavior of Remington in failing to fix this known problem and failing to warn the general public of this known danger. Once this reckless conduct is proven, the Idaho cap on damages is waived.

Plaintiff respectfully requests that it be allowed enough latitude to discover this vital information that Remington has tried to hide (and only produced in other cases when ordered to by the court).

## V. Deadlines

    a. The deadline for the completion of fact discovery is: February 2, 2018.

    b. The deadline for completion of expert witness discovery is: February 15, 2018.

## VI. Documents Protected From Discovery

    a. **Clawback:** Pursuant to Fed. R. Evid. 502(d), the parties request the Court to enter an Order that production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or work-product protection in this case or in any other federal or state proceeding.

    b. **Post-Notice of a Claim Communications:** Communications involving trial counsel that post-date the notice of the claim need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## VII. Protective Order

    a. The parties will attempt to agree to the terms of a Protective Order to protect *[trade secrets, proprietary material, personal information, etc]* and will submit that to the Court for its approval.

    b. The parties understand that, even if they agree to seal material filed with the Court, they must still file a motion to seal and obtain Court approval that

the sealing meets the Ninth Circuit standards for sealing.  *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).